IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTHONY C. ROTH, ON BEHALF OF LESTER L. BOWER, JR.,<br><br>        Plaintiff,<br><br>              v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civ. A. No. 08-00822 (ESH)

## SECOND DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), formerly at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C., and currently relocated to Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 225 employees who staff a total of ten (10) Units and two field operational service center units whose

collective mission is to effectively plan, develop, direct, and manage responses to requests for access to the Federal Bureau of Investigation ("FBI") records and information pursuant to the FOIA; Privacy Act of 1974; Presidential, Attorney General and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Specifically, I am aware of the treatment which has been afforded the FOIA/Privacy Act requests made by plaintiff, who seeks access to records concerning Mr. Bower, as well as other third-party individuals.

(4)    This declaration supplements the information previously provided in my first declaration dated February 3, 2009, submitted with defendant's Motion for Summary Judgment, hereafter referred to as the "First Hardy Declaration."

(5)    This declaration is submitted in support of defendant's reply to plaintiff's cross motion for a more particularized Vaughn index or in camera review of withheld and redacted documents, hereafter referred to as "Pl.'s Mem."

(6)    In Pl.'s Mem., plaintiff avers that defendant should provide additional details with respect to information withheld under Exemptions (b)(2)-3 and (b)(7)(E)-1, relating to polygraphs (ROTH/BOWER-313, 319, 613, 1262, 1264-1265, 1268-1270, 1362-1363, 1365-1378, 1381-1388, 1418, 1420-1421, and 1450-1459). See Pl. Mem., pp. 18-19. In response,

2

defendant states that it administered polygraphs in the course of its assistance to local law enforcement in the murder investigation involving Mr. Bower. The documents relating to the polygraphs, if disclosed, would reveal techniques used by FBI polygraphers and would allow for circumvention of those techniques. The release of this information, specifically -- polygraph worksheets and questions, examination results, and charts/graphs -- would disclose the identity and type of device used in electronic monitoring and logistical considerations involved in polygraph examinations. Such disclosures would enable subjects of FBI investigations to circumvent these and similar techniques which the FBI is currently using. Release of this type of information would enable criminals to educate themselves about the techniques employed for the administration of polygraph examinations and therefore allow these individuals to take countermeasures to circumvent the effectiveness of these techniques and to continue to violate the law. The age of the documents in question while considered, does not undercut the rationale behind the withholding of this information.

(7)     Plaintiff avers that defendant withheld approximately twenty-six (26) pages of material in their entirety based in part pursuant to Exemption (b)(3)-1, relating to Federal Grand Jury Subpoenas. See Pl. Mem., p. 19. Defendant notes that it disclosed to plaintiff in part the face of the subpoenas found. Defendant withheld from the face of the subpoenas the names, identifying information of individuals subpoenaed to testify before the Federal Grand Jury and information that identifies specific records subpoenaed by the Federal Grand Jury:

ROTH/BOWER-1549-1559 and 1561-1571, defendant withheld in their entirety pursuant to Exemption (b)(3)-1 and in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure to withhold material attached to Federal Grand Jury Subpoenas. The pages withheld

3

in their entirety were attachments to some of the subpoenas which were the actual records returned to the grand jury. The disclosure of such details would clearly violate the secrecy of the grand jury proceedings and could reveal the inner workings of the federal grand jury that considered this case.

ROTH/BOWER-275 and 663-664, defendant withheld in their entirety pursuant to Exemption (b)(3)-1 and in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure and Exemptions (b)(6) and (b)(7)(C) to withhold FD-302 interview reports depicting names, identifying information of individuals and/or entities subpoenaed to testify before the Federal Grand Jury, along with the information that identifies specific records subpoenaed by the Federal Grand Jury.

ROTH/BOWER-955-956 and 958, defendant withheld in their entirety pursuant to Exemption (b)(3)-1 and in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure and Exemptions (b)(6) and (b)(7)(C). These documents contain handwritten investigative notes of what appears to be a listing of third parties and/or entities to submit Grand Jury subpoenas to for testimony and/or the production of documents before the Grand Jury. These documents were located within an envelope marked "Grand Jury material - disseminate only pursuant to Rule 6(e), Fed. R. Crim. P."

Defendant withheld the names, identifying information of individuals subpoenaed to testify before the Federal Grand Jury and information that identifies specific records subpoenaed by the Federal Grand Jury. The disclosure of such details would clearly violate the secrecy of the grand jury proceedings and could reveal the inner workings of the federal grand jury that considered this case.

4

(8)     Plaintiff states defendant withheld two documents pursuant to Exemption (b)(5), relating to Deliberative Process Privilege. See Pl. Mem., p. 20.

a.     Draft search warrant and supporting affidavit (ROTH/BOWER-568-574): Defendant made a special inquiry to the Texas Department of Public Safety (Texas Rangers) concerning the need to maintain the confidentiality of the deliberative information. Defendant has been advised by the Texas Department of Public Safety (Texas Rangers), that the deliberative information in the draft search warrant and supporting affidavit can now be released. Defendant therefore is releasing the deliberative information in these documents. Defendant has withheld solely the names of FBI special agents pursuant to Exemptions (b)(6) and (b)(7)(C). (See Exhibit A.)

b.     Executive Office for United States Attorneys ("EOUSA") documents (ROTH/BOWER-79-81): Defendant made a special inquiry to the EOUSA concerning the need to maintain the confidentiality of these documents. Defendant has been advised by the EOUSA that the documents can now be processed and released. Therefore, defendant is releasing the documents, but has withheld the name of an FBI special agent pursuant to Exemptions (b)(6) and (b)(7)(C). (See Exhibit B.)

(9)     Plaintiff states defendant withheld "entire" pages of documents under Exemptions (b)(6) and (b)(7)(C). See Pl. Mem., pp. 21-24. Defendant provides the following information with respect to Bates pages:

ROTH/BOWER-114-117, 119: These pages can now be released in part since the third party is deceased. Information has been withheld pursuant to Exemptions (b)6) and (b)(7)(C). (See Exhibit C.)

5

ROTH/BOWER-118: This document pertains to Department of Motor Vehicle data for a third party merely mentioned. Defendant continues to assert (b)(6) and (b)(7)(C) to withhold the document in its entirety. The information withheld consists of identifying information such as the individual's name, address, vehicle's make, model and VIN number.

ROTH/BOWER-120-123: These pages can now be released in full since the third party is deceased. (See Exhibit D.)

ROTH/BOWER-124: This document was not withheld in its entirety as stated by plaintiff. There was only one redaction on this document (i.e., a third party name) withheld pursuant to (b)(6) and (b)(7)(C).

ROTH/BOWER-958: Previously described in ¶7.

ROTH/BOWER-1143-1147, 1149, 1151-1158, 1160-1166, 1168-1172, 1174-1175, 1177-1180, 1182, 1477-1491, 1500-1512, 1514-1515, 1517-1518, 1520, 1522-1529, and 1531-1536: These documents provide registers of dialed telephone numbers of third parties. If these documents were released, the telephone numbers could be linked to an individual(s). Defendant continues to assert (b)(6) and (b)(7)(C) to withhold the documents in their entirety.

ROTH/BOWER-1314-1320: These documents are United Parcel Service ("UPS") delivery logs reflecting deliveries to third parties. If these documents were released, the identifying information (e.g., name, signature, and address) could be linked to an individual(s). Defendant continues to assert (b)(6) and (b)(7)(C) to withhold the documents in their entirety. The fully withheld documents are not segregable in that the extensive redactions would cause only a patchwork of unintelligible text.

ROTH/BOWER-781: This document is a criminal record (i.e., rap sheet) of a third party

6

of investigative interest.  Defendant continues to assert (b)(6) and (b)(7)(C) to withhold this document in its entirety.

ROTH/BOWER-1071-1138:  These documents are surveillance images of third parties and/or identifying information of third parties of investigative interest.  Defendant continues to assert (b)(6) and (b)(7)(C) to withhold these documents in their entirety.

ROTH/BOWER-1197, 1199, 1201, 1203, and 1205:  Described in ¶10, the Dallas Police Department has authorized the release of these documents.  (See Exhibit I.)

ROTH/BOWER-1493-1494, 1496-1497, 1538-1539, and 1541-1542:  These documents are photos of third parties with identifying information on the backside of the photos of third parties of investigative interest.  Defendant continues to assert (b)(6) and (b)(7)(C) to withhold this document in its entirety.

ROTH/BOWER-612, 1267 and 1419: Defendant has reprocessed these pages to achieve maximum disclosure.  Defendant continues to withhold third party names and identifying information, pursuant to (b)(6) and (b)(7)(C).  (See Exhibit E.)

ROTH/BOWER-1271:  This document is a handwritten note with a single date and the name of a third party.  Defendant has reprocessed this document and is withholding only the third party's name, pursuant to (b)(6) and (b)(7)(C).  (See Exhibit F.)

ROTH/BOWER-1275:  This document is a third party's telephone bill containing their identifying data (i.e., name, address and telephone number).  Defendant continues to assert (b)(6) and (b)(7)(C) to withhold this document in its entirety.  The fully withheld document is not segregable in that the extensive redactions would cause only a patchwork of unintelligible text.

ROTH/BOWER-1547:  This document is an agent's handwritten note with specific details

7

of third parties and/or identifying information about third parties providing information to the
FBI. Information provided by these individuals is singular in nature and if released, could reveal
their identity. Defendant continues to assert (b)(6) and (b)(7)(C) to withhold this document in its
entirety.

ROTH/BOWER-809-813, 883: These documents are United Parcel Service ("UPS")
delivery logs reflecting deliveries to third parties. If these documents were released, the
identifying information (e.g., name, signature, and address) could be linked to an individual(s).
Defendant continues to assert (b)(6) and (b)(7)(C) to withhold the documents in their entirety.
The fully withheld documents are not segregable in that the extensive redactions would cause
only a patchwork of unintelligible text.

ROTH/BOWER-1044-1045: These documents are the front and back of a business card.
After further review, defendant is releasing these documents in part. Exemptions (b)(6) and
(b)(7)(C) have been asserted to protect the handwritten name and address of a third party. (See
Exhibit G.)

(10)    Plaintiff seeks additional information regarding defendant's withholding of
documents pursuant to Exemption (b)(7)(D)-1, relating to information provided by a local law
enforcement agency. See Pl. Mem., pp. 24-25. Defendant has made a special inquiry of local
law enforcement agencies who provided information under an implied agreement of
confidentiality, as to whether or not the confidentiality could be waived and the information be
released. The following responses were received:

Defendant has been advised by the Texas Department of Public Safety (Texas Rangers),
that on Bates pages: ROTH/BOWER-148-174, 176-192, 194-202, 282, 284-285, 287, and 289

8

confidential information can now be released in full; and Bates pages: ROTH/BOWER-175,

193, 283, 286, 288, 290 can now be released in part, withholding confidential information (i.e.,

personal information in driver's licensing records, vehicle ownership records, social security

account numbers, and information gained from a polygraph examination) pursuant to Texas

Transportation Code, Section 730.004, Texas Occupations Code, Section 1703.306 and Texas

Government Code, Sections 552.101, 552.130 and 552.147. Defendant has also asserted

Exemptions (b)(6) and (b)(7)(C) to protect the names of FBI special agents and FBI support

personnel on Bates pages: 156, 159, 164, 181, 186, 201, 202, and 282. (See Exhibit H.)

The Dallas Police Department has advised that they are agreeable with the release of

confidential information on Bates pages: ROTH/BOWER-1186-1193, 1197-1206. (See

Exhibit I.)

A third law enforcement agency requests that their confidential information located at

ROTH/BOWER-1404-1407, 1409-1412, and 1436, 1438-1448, continue to be withheld as their

investigations remain open and the release of this material could harm pending law enforcement

investigations.

(11)    Plaintiff seeks additional information regarding defendant's withholding of

documents pursuant to Exemption (b)(7)(D)-2, relating to the names, identifying information for,

and information provided by, third parties to the FBI or other law enforcement agencies in the

investigative files under an implied grant of confidentiality. See Pl. Mem., pp. 25-26. Defendant

withheld information provided by third parties who provided information concerning the criminal

activities of plaintiff or other subjects who were of interest to the FBI or other law enforcement

agencies (ROTH/BOWER-90-91, 132-135, 140, 153, 206-207, 254-256, 655-657, 979-980,

9

1049, 1277-1282, and 1289-1297). These third party sources provided specific detailed information that is singular in nature concerning the criminal activities involving plaintiff, his associates, and/or other subjects of this investigation. Because of the singular nature of the information, its disclosure would identify the person who provided the information. Additionally, these third parties provided information of value to the FBI concerning this investigation, and in doing so, have placed themselves in harm's way should plaintiff or his associates become aware of their cooperation with the FBI.[1]

(12)    Plaintiff questions the privacy interests in this case since twenty-five years have passed. Defendant took several steps to ascertain the current life/death status of the individuals' names withheld under Exemptions 6 and 7(C) in defendant's Vaughn index. For individuals whose names were not connected to an identifiable date of birth and/or social security number, defendant withheld the names under Exemptions 6 and 7(C) because they were unable to determine the individual(s) life status; and, therefore, presumed living. For individuals' names whose date of birth was available, defendant used the date of birth to apply the judicially-recognized "100-year-rule," i.e., if the individual was born more than 100 years ago, the defendant presumes that the individual is dead and the name is released. Additionally, when a date of birth was available, defendant also researched life status by utilizing the Social Security Death Index ("SSDI") to ascertain the individuals' life status. The SSDI is an Internet database of death records created from the United States Social Security Administration's Death Master File. (The Death Master File is commercially known as the SSDI.). For individuals' names whose

---

[1]    Plaintiff correctly notes that Mr. Bower is the only individual arrested and convicted for the murders. Defendant erroneously stated in its First Hardy Declaration ¶81, that plaintiff "and other subjects" were arrested and convicted. Defendant regrets this error.

social security number was available, defendant utilized the SSDI to determine the individuals' life status. Defendant also utilized institutional knowledge gained from prior FOIA requests or internal records to determine individuals' life status. Unfortunately, this additional life status research was not an efficient use of resources compared to the results yielded.[2] Defendant researched the life status of 144 third-party names referenced in the Vaughn index; however, it only determined four additional names could be released. Out of the four names identified as deceased persons, three were confirmed through the use of the SSDI. The fourth deceased person was inadvertently withheld on Bates page: ROTH/BOWER-93, but released on ROTH-BOWER-95. A copy of the reprocessed pages, ROTH/BOWER-27-29, 32, 35-36, 43, 93, 114-117, 119-123, and 1197-1206 reflecting the releasable names are attached. (See Exhibit J.)

(13)    Plaintiff specifically seeks additional information on redacted Bates pages: ROTH/BOWER-35-36, 46-47. See Pl. Mem., p. 30. Defendant has reprocessed these pages to reflect the removal of Exemption (b)(7)(D)-1 (protect information provided by local law enforcement); however, Exemptions (b)(6) and (b)(7)(C) continue to be asserted to protect the names and/or identifying information about the suspects. Defendant has released all reasonably segregable, nonexempt information in this case. (See Exhibit K.)

(14)    Plaintiff specifically seeks additional information on redacted Bates pages: ROTH/BOWER-76, 108 and 457. See Pl. Mem., p. 30. Defendant asserted (b)(7)(D)-4 to

---

[2]       In this case, the success rate for positively determining the life status of an individual was two percent, i.e., defendant was able to determine positively that three of 144 third-party names were releasable. This is a time-consuming process with an inarguably low rate of success which admittedly, could vary case-to-case. Experience suggests however, that this is not an anomaly.

protect the information provided by and/or identifying data concerning source symbol numbered informants of the FBI. Source symbol numbers are numbers that have been assigned to source symbol informants who have been given an express agreement of confidentiality. The disclosure of this information may likely reveal a confidential source's identity. The disclosure of a source's identity would forever neutralize that source as a future means of obtaining information. In addition, when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources. It is only with the understanding of complete confidentiality that the aid of such sources can be enlisted, and only through this confidence that these sources can be persuaded to continue providing valuable assistance in the future.

(15)    Plaintiff specifically seeks additional information on redacted Bates pages: ROTH/BOWER-90 and 91, relating to the identity of an unidentified area or place that was searched. See Pl. Mem., pp. 30-31. If defendant was to provide more details as to the identity of the location searched during this criminal investigation, it would reveal the identity of the source whom we are trying to protect pursuant to Exemption (b)(7)(D)-2.

Additionally, plaintiff seeks additional information on redacted Bates page: ROTH/BOWER-254, relating to a discussion between the FBI and a source. See Pl. Mem., pp. 30-31. While the source provided information to the FBI "voluntarily," the information the source provided is so singular in nature concerning the criminal investigation that it would reveal the identity of the source. If his/her identity was exposed, he/she could be harassed, intimidated, or threatened with legal, economic reprisal or possible physical harm.

(16)    Plaintiff seeks additional information on redacted Bates page: ROTH/BOWER-

12

91, relating to a person who allegedly has detailed information regarding the case. See Pl. Mem., p. 32. Defendant inadvertently asserted coded category (b)(6)-2 and (b)(7)(C)-2. The appropriate coded category is (b)(6)-5 and (b)(7)(C)-5, "Names and/or identifying information of third parties who provided information to the FBI." The FBI withheld identifying information (e.g., address, personal information) relating to the third party, as well as details of the information provided by the source which would likely identify the source pursuant to Exemptions (b)(6), (b)(7)(C) and (b)(7)(D)-2.

The FBI has found that information provided by individuals during an interview is one of the most productive investigative tools used by law enforcement agencies. The largest roadblock to successfully obtaining the desired information through an interview is fear by the interviewee that his/her identity will possibly be exposed and consequently he/she could be harassed, intimidated, or threatened with legal, economic reprisal or possible physical harm. To surmount these obstacles, persons interviewed by the FBI must be assured that their names and personal identifying information will be held in the strictest confidence. The continued access by the FBI to persons willing to honestly relate pertinent facts bearing upon a particular investigation far outweighs any benefit plaintiff might derive from being furnished the names of those who cooperated with the FBI.

Thus, the FBI has determined that the third party interviewees maintain a substantial privacy interest in not having their identities disclosed. After identifying the substantial privacy interests of the third parties interviewed during the course of the FBI's investigation of plaintiff, the FBI balanced these individuals' right to privacy against the public interest in the disclosure.

13

The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of the third parties' names and identifying information would not shed light on the operations and activities of the FBI. Accordingly, the FBI concluded that the disclosure of this information would constitute a clearly unwarranted and unwarranted invasion of their personal privacy.

(17)    Plaintiff seeks additional information regarding defendant's withholding of documents pursuant to Exemption (b)(7)(D)-5, relating to information provided by a source under an express assurance of confidentiality. See Pl. Mem., p. 32. On Bates pages: ROTH/BOWER-97-101 and 477 defendant protected the names, identifying information for, and information provided by third parties specifically requesting that their identity not be disclosed because they feared reprisal. These documents released on their face reveals the source stated they "DESIRED TO REMAIN ANONYMOUS" or "PROTECT IDENTITY." These words are a positive indication of an express assurance of confidentiality. These sources provided valuable information that is detailed and singular in nature. The disclosure of the identities of these individuals could have disastrous consequences.

(18)    Plaintiff seeks additional information regarding defendant's withholding of documents (ROTH/BOWER-111-113) pursuant to Exemptions (b)(6)-4 and (b)(7)(C)-4 (names and/or identifying information of third parties of investigative interest); and Exemptions (b)(6)-5 and (b)(7)(C)-5 (names and/or identifying information of third parties who provided information to the FBI). See Pl. Mem., pp. 32-33. On these pages an individual who had an express agreement of confidentiality provided names and identifying information of individuals of

14

investigative interest to the FBI.

Additionally, plaintiff seeks additional information regarding defendant's withholding of documents pursuant to Exemption (b)(7)(D)-5 (names and/or information provided by parties under "express" assurance of confidentiality). See Pl. Mem., p. 33. On Bates page: ROTH/BOWER-111-112, defendant protected the name, identifying information for, and information provided by a third party who specifically requested that their identity not be disclosed because they feared reprisal. This is evidenced by the fact that the source stated they "DESIRED TO REMAIN ANONYMOUS."[3] These words are a positive indication of an express assurance of confidentiality. The source provided valuable information that is detailed and singular in nature. The disclosure of the identity of this individual could have disastrous consequences.

Moreover, on Bates pages: ROTH/BOWER 112-113, defendant protected information provided by a source symbol numbered informant (reflected by coded category (b)(7)(D)-3 -- confidential source symbol number).

(19)    Plaintiff seeks additional information regarding defendant's withholding of information pursuant to Exemptions (b)(6)-2 and (b)(7)(C)-2 (names and/or identifying information concerning third parties merely mentioned) and (b)(6)-4 and (b)(7)(C)-4 (names and/or identifying information of third parties of investigative interest), and an explanation of the extensive redactions. See Pl. Mem., p. 34. Defendant redacted information contained in

---

[3]      ROTH/BOWER-111 was originally processed with the words "DESIRED TO REMAIN ANONYMOUS" redacted; however, in an effort to further demonstrate that the source requested that their identity be protected, defendant has reprocessed ROTH/BOWER-111. See Exhibit L.

15

ROTH/BOWER-128, because the page contains the name and identifying information of a confidential informant (See ¶20).

(20)    Plaintiff seeks additional information regarding defendant's withholding of information pursuant to Exemption (b)(7)(D)-5 (names and/or information provided by parties under an "Express" assurance of confidentiality). See Pl. Mem., p. 34. Defendant withheld information on Bates page: ROTH/BOWER-129, because this source provided information to the FBI for a number of years as a confidential informant with an express promise of confidentiality, even though the information provided in this case was some time after the termination of that relationship, it is a reasonable assumption that the source believed that the promise of confidentiality continued.

(21)    Plaintiff seeks additional information regarding defendant's withholding of information pursuant to (b)(6)-5 and (b)(7)(C)-5 (names and/or identifying information of third parties who provided information to the FBI), cited in conjunction with (b)(7)(D)-2 (names and/or identifying information provided by third parties under an "Implied" assurance of confidentiality). See Pl. Mem., p. 34. Defendant withheld information on Bates page: ROTH/BOWER-140, because a third party source provided specific detailed information that is singular in nature concerning the criminal activities involving plaintiff, his associates, and/or other subjects of this investigation. The disclosure of the identity of this individual could have disastrous consequences and could place them in harm's way should plaintiff or his associates become aware of their cooperation with the FBI. The information the third party provided under an assurance of confidentiality warrants the protection of the individual's name as well as the

16

singular information they provided.

Additionally, plaintiff questions defendant's withholding under (b)(7)(D)-5 (names and/or information provided by parties under an "Express" assurance of confidentiality) on Bates page: ROTH/BOWER-141. See Pl. Mem., p. 34. Defendant protected the name, identifying information for, and information provided by a third party specifically requesting that their identity not be disclosed because they feared reprisal. This is evidenced by the fact that the report states "THIS INDIVIDUAL HAS CONFIDENTIALLY ADVISED." These words are a positive indication of an express assurance of confidentiality. The source provided valuable information that is detailed and singular in nature. The disclosure of the identity of this individual could have disastrous consequences.

(22)    Plaintiff disputes that the issues regarding Count I of the Complaint are resolved. See Pl. Mem., pp. 35-37. Defendant addressed this issue previously in First Hardy Declaration ¶ 8, 14, 18, and 19. By letter dated January 23, 2008, the FBI advised plaintiff that he needed to submit proof of death or privacy waivers for the named individuals referenced in his January 3, 2008 FOIA request (i.e., Jerry Buckner; Brett Leckie; Chestley Galen Gordon; Lynn Langford; and Robert T. Ford) before the FBI would commence searching for any documents related to these individuals. To date the only proof of death provided to defendant is that of Brett Leckie. Defendant processed plaintiff's FOIA request for Bret Leckie and made a release to plaintiff on or about June 13, 2008.

(23)    In an effort to resolve this matter, defendant has performed additional research to ascertain the current life/death status of the following third parties: Jerry Buckner, Chestley

Galen Gordon, Lynn Langford, and Robert T. Ford.

Jerry Buckner - plaintiff did not provide identifiable date of birth and/or social security number in his FOIA request. Therefore, defendant was unable to determine Mr. Buckner's life status; and, therefore, presumed living.

Chestley Galen Gordon - plaintiff provided Mr. Gordon's date of birth and social security number. Defendant used the date of birth to apply the judicially-recognized "100-year-rule," i.e., if the individual was born more than 100 years ago, the defendant presumes that the individual is dead and the name is released. Additionally, defendant researched life status by utilizing the Social Security Death Index ("SSDI") to ascertain the individual's life status. Defendant's research indicates that Mr. Gordon is living. Therefore, a privacy waiver is necessary in order to release potentially responsive material regarding Mr. Gordon.

Lynn Langord and Robert T. Ford - plaintiff provided social security numbers for Langford and Ford. Defendant researched life status by utilizing the Social Security Death Index ("SSDI") to ascertain these individuals' life status. Defendant's research indicates that Langford and Ford are living. Therefore, privacy waivers are necessary in order to release potentially responsive material regarding Langford and Ford.

(24)     The plaintiff's request concerning the abovementioned individuals was construed as a request for criminal investigative information about these third parties. This construction of the request was reasonable since plaintiff has confirmed that he is seeking "documents relating to the persons that have been identified as the real killers" and that "The FBI refused to search for documents regarding the real perpetrators of the murders." Pl's Mem., p. 7. The information

requested was reasonably likely to be found in the FBI's Central Records System, and particularly in the criminal investigative files described in the First Hardy Declaration at ¶ 37-42. No other record system within the FBI would reasonably contain information responsive to plaintiff's request.

(25)    The Central Records System is a Privacy Act System of Records. The system is exempt from the access provisions of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2) as published in the Department of Justice Agency Rules at 28 Code of Federal Regulation § 16.96. As a Privacy Act System of Records, the conditions of disclosure are, in pertinent part, pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be required under the Freedom of Information Act, 5 U.S.C. § 552, or  pursuant to the order of a court of competent jurisdiction.

(26)    The FBI's January 23, 2008 response regarding plaintiff's requests for information on these particular third parties was made in order to protect the privacy interests of the individuals, pursuant to the Privacy Act and FOIA Exemptions (b)(6) and (b)(7)(C). See First Hardy Declaration at Ex I. Merely confirming that an individual is mentioned in an FBI criminal record system is a disclosure under the Privacy Act and can have a potentially stigmatizing or embarrassing effect, since the disclosure carries the connotation that the individual either came to the attention of or assisted the FBI during the course of its administration of the duties imposed upon it by Federal Statute, Executive Order or Presidential Directive. As a result, simply confirming that the FBI has records on the individual in its possession, in and of itself, would constitute a violation of an individual's privacy. This is particularly so in the instant case where

19

plaintiff clearly is seeking information concerning whether or not the named individuals (the
alleged real perpetrators of the murders)  were the subjects, targets, or otherwise mentioned in
criminal investigative files, and particularly in criminal investigative files concerning the murders
for which Mr. Bower was convicted.  The exemptions clearly protect the identities of suspects
and other persons of investigatory interest who are identified in agency records in connection
with law enforcement investigations.

(27)   Without confirming or denying the existence of such information, defendant has
determined that plaintiff has identified no public interest which would be served by, and the FBI
could  identify no discernible public interest in the disclosure of Privacy Act protected
information concerning these identified third parties, if such information should exist, because
the disclosure would not shed light on the operations and activities of the FBI.  Plaintiff has only
identified the personal interest of Mr. Bower in acquiring alleged *Brady* information by which to
challenge his conviction.  Accordingly, the FBI concluded that the disclosure of this information
would constitute a clearly unwarranted and unwarranted invasion of their personal privacy.
Therefore, the privacy interests of these individuals in the potentially stigmatizing and
embarrassing effect  and potential resulting harassment and other injury in being associated as
subjects or targets of a criminal investigation of the FBI or otherwise mentioned in said FBI files,
would require categorical denial of plaintiff's requests under exemptions 6 and 7(c), if such
information were to exist.

## CONCLUSION

(28)   Defendant has reviewed the processing of all the documents in this case under the

20

new Attorney General guidelines.

(29)     Plaintiff has been provided all segregable information, and no reasonably segregable portion of the withheld material can be released for all of the reasons explained above. The FBI carefully reviewed each of the documents for segregability purposes. As demonstrated above and in the First Hardy Declaration, the only information withheld by the FBI consists of information that would disclose internal practices, reveal Federal Grand Jury information protected by statute, reveal privileged information, infringe upon the personal privacy of third party individuals, disclose the identities of confidential sources, and disclose law enforcement techniques. The FBI is unable to segregate the information contained in these documents further, without revealing the protected information itself, or the matter remaining after segregation is of no informational value. Accordingly, the FBI has released all reasonably segregable, nonexempt information to plaintiff.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and Exhibits A through L attached hereto are true and correct copies.

Executed this ___ day of June, 2009

DAVID M. HARDY
Section Chief
Record/Information Dissemination
  Section
Records Management Division
Federal Bureau of Investigation
Winchester, V.A.

21