## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| **ANTHONY C. ROTH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 08-822 (ESH)** |
| | ) |
| **UNITED STATES DEPARTMENT** | ) |
| **OF JUSTICE,** | ) |
| | ) |
| **Defendant.** | ) |

_____)

## <u>MEMORANDUM OPINION</u>

In this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Plaintiff

Anthony Roth challenges the response of the Federal Bureau of Investigation ("FBI") to his

request for records on behalf of his client, Lester Leroy Bower, Jr.  Having produced numerous

documents to Mr. Roth, the FBI now moves for summary judgment as to those documents which

it has withheld in part or in their entirety [Dkt. No. 15].  The issues before the Court are:  1)

whether the FBI properly invoked various exemptions under FOIA to withhold and redact certain

responsive documents; and 2) whether the FBI properly refused to process certain of Mr. Roth's

requests regarding third parties.  Upon consideration of the parties' submissions and the entire

record, including the Court's *in camera* review of the documents at issue, the Court will grant in

part and deny in part the FBI's motion for summary judgment.

## BACKGROUND

Mr. Roth is an attorney representing Mr. Bower, who was convicted in April 1984 of four murders committed in Texas in 1983 and is on death row.  (Compl. ¶¶ 4, 6.)  The FOIA requests at issue[1] were made on January 3, 2008, and sought information related to the murders and subsequent investigation.[2]  (Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. and In Support of Cross Mot. for a More Particularized *Vaughn* Index or *In Camera* Review of Withheld and Redacted Documents ["Pl.'s Opp."] at 7.)

One of Mr. Roth's January 3, 2008 requests sought documents relating to persons who have been identified by witnesses as having committed the 1983 murders, and the other called for documents containing information about the FBI investigation that led to Mr. Bower's arrest, conviction, and sentencing.  (Pl.'s Opp. at 4, 7.)  Mr. Roth also served a FOIA request on the Executive Office for United States Attorneys ("EOUSA"), seeking documents related to the investigation of Mr. Bower.  (Pl.'s Opp at 7.)

The FBI responded to Mr. Roth's first January 2008 FOIA request, concerning individuals identified by witnesses as having committed the 1983 murders, by stating that the request could not be processed without proof of death of or a privacy waiver from the named

---

[1] Several FOIA requests were submitted to the FBI by Mr. Roth and another member of his firm prior to January 2008.  Mr. Roth's complaint specifically challenges only the responses of the FBI to his January 2008 FOIA requests.  (Compl. ¶¶ 12–31; June 12, 2008 Status Rep. at 5.)

[2] Specifically, the first request sought information pertaining to:  1) Jerry Buckner; 2) Brett ("Bear") Leckie; 3) Chestley ("Ches") Galen Gordon (Social Security Number xxx-xx-3406; Date of Birth xx/xx/54; 4) Lynn Langford (Social Security Number xxx-xx-0758); and 5) Robert ("Rocky") T. Ford (Social Security Number xxx-xx-9361).  (Decl. of David M. Hardy ["Hardy Decl."] ¶ 8.)  The second request called for documents regarding the following topics:  1) FBI Field Office File DL 179B-97, Volume I, Serials 1-40; 2) FBI Field Office File DL 179B-97, Volume II, Serials 41-111; 3) FBI Field Office File DL 179B-97, Volume III, Serials 112-199; 4) FBI Field Office File DL 179B-97, Volume IV, Serials 200-305; 5) FBI Field Office File DL 179B-97, Volume V, Serials 306-__; 6) FBI Field Office File DL 179B-97, Volume Number 1A; 7) FBI Field Office File DL 179B-97, Volume 1B; 8) FBI Headquarters File HQ 163-18573; 9) FBI File DL 62D-5174; and 10) FBI File 95-259626.  (Id. ¶ 9.)

individuals.  (June 12, 2008 Status Rep. at 6.)  Subsequently, Mr. Roth provided the FBI with

proof of death of one of the individuals, Mr. Leckie, and the FBI processed the request as to him.

(Aug. 14, 2009 Joint Status Rep. at 7.)  Mr. Roth has since narrowed his request to documents

relating to only three of the remaining individuals:  Ford, Langford, and Gordon.  (*Id.*)   The FBI

has conducted death searches for each of these individuals, and it appears that all are alive or

may be presumed to be alive.  (*Id.* at 8.)  The FBI therefore refused to process any searches for

documents concerning these individuals, citing their privacy interests.  (Second Decl. of David

M. Hardy ["Second Hardy Decl."] ¶¶ 22-26.)  Count I of Mr. Roth's complaint alleges that the

FBI has improperly refused to process this request.  (Compl. ¶¶ 32-35.)

   In response to Mr. Roth's second January 2008 FOIA request, which sought documents

regarding the FBI investigation of the 1983 murders, the FBI agreed to conduct a search for

responsive documents but had not released any such documents at the time Mr. Roth filed his

complaint.  (Pl.'s Opp. at 8; June 12, 2008 Status Rep. at 8.)  After a meeting between the parties

and status conferences with the Court, the parties agreed that the FBI would reprocess all of the

records pertaining to FBI Files HQ 163-18573, DL 179B-97, and DL 62D-5174.  (Pl.'s Opp. at

9; Compl. ¶¶ 36-39.)  In October 2008, the FBI released to Mr. Roth 1,370 pages of documents

(many in redacted form) from the 1,948 pages which had been reviewed.  (Hardy Decl. ¶ 34 n.7;

Pl.'s Opp. at 9-10.)  Mr. Roth then requested the FBI to provide a *Vaughn* index for any

documents the agency had withheld in their entirety, as well as for 19 additional documents that

the FBI had previously produced.  (Hardy Decl. ¶35.)  The FBI provided Mr. Roth with a list of

withheld material and corresponding descriptions in the declaration of David M. Hardy of the

FBI.  (Mem. of P. & A. in Support of Def.'s Mot. for Summ. J. ["Def.'s Mem."] at 4; Pl.'s Opp.

at 14-15.)  At the same time, the FBI filed for summary judgment, arguing that it had properly

redacted and withheld information pursuant to various Privacy Act and FOIA exemptions and that all reasonably segregable, non-exempt material had been released.  (*Id.* at 11-32; 44.)

After the filing of the FBI's motion for summary judgment and subsequent briefing by both parties, the FBI released an additional 179 pages of responsive documents, as well as four pages of sample documents representative of another 92 pages.  (Aug. 14, 2009 Joint Status Rep. at 1.)  Following a series of meetings between the parties and status conferences with the Court, the parties narrowed the current dispute to: 1) 40 pages of responsive documents withheld by the FBI in their entirety; 2) redactions on two pages of documents released by the FBI to Mr. Roth on August 10, 2009; and 3) redactions on 24 pages of documents previously released to Mr. Roth.  (*Id.* at 1.)  Mr. Roth requested an *in camera* review by the Court to ensure that the FBI has properly redacted or withheld information pursuant to FOIA.  (*Id.* at 1.)  On August 19, 2009, this Court ordered the FBI to produce the documents still at issue for *in camera* review.[3]

Having now reviewed the 66 documents produced by the FBI, the Court finds that, with minor exceptions, the FBI has properly withheld the documents under FOIA.  The Court further finds that the FBI has properly invoked FOIA Exemptions 6 and 7(C) in refusing to conduct searches for documents pertaining to third parties without proof of death or privacy waivers. Therefore, the Court grants the FBI's motion for summary judgment in part.

---

[3] Mr. Roth's third January 2008 FOIA request to the EOUSA discussed in Count III of the complaint, was not addressed in the parties' briefs and, according to their status report, is no longer at issue.  (Aug. 14, 2008 Joint Status Rep. at 1; *see also* Pl.'s Opp. at 35.)

## ANALYSIS

### I.     FOIA: General Principles and Standard of Review

FOIA reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (quoting S. Rep. No. 890813 (1965)).  Thus, federal agencies must make their records promptly available to any person who makes a proper request for them unless the agency establishes that the information is appropriately withheld under one or more of the nine exemptions set forth in the statute.  *See* 5 U.S.C. § 552(a)-(b).  The nine exemptions are exclusive and should be narrowly construed.  *Rose*, 425 U.S. at 361.  When a challenge is made to an agency's decision to withhold information, the "burden is on the agency to sustain its action," and the district court is instructed to "determine the matter de novo."  5 U.S.C. § 552(a)(4)(B).  Even if some of the requested records contain exempt information, "the agency must still release 'any reasonably segregable portion' after deletion of the nondisclosable portions."  *Oglesby v. U.S. Dep't. of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996) (quoting 5 U.S.C. § 552(b)).

"At the same time, of course, it must be recognized that FOIA represents a carefully considered balance between the right of the public to know what their government is up to and the often compelling interest that the government has in keeping certain information private, whether to protect particular individuals or the national interest as a whole."  *Am. Civil Liberties Union v. FBI*, 429 F. Supp. 2d 179, 186-87 (D.D.C. 2006).  "As such, the exemptions must be given 'meaningful reach and application,'" *id.* at 187 (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)), as they "represent[] the congressional determination of the

types of information that the Executive Branch must have the option to keep confidential, if it so chooses." *Rose*, 425 U.S. at 361.

"FOIA cases appropriately may be decided on motions for summary judgment." *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007).  In deciding whether information has been properly withheld under FOIA exemptions, the Court may rely on affidavits or declarations from the agency.  *See SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  Alternatively or in addition to such affidavits, the reviewing court "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions." 5 U.S.C. § 552(a)(4)(B).  But "whether the Court relies on affidavits or declarations, an *in camera* review of the documents, or . . . both, an agency must demonstrate that 'each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements.'"  *Bigwood*, 484 F. Supp. 2d at 73 (second alteration in original) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

In the instant case, the FBI has claimed FOIA Exemptions 2, 6, 7(C), and 7(D) in declining to produce part or all of the 66 documents at issue and in refusing to confirm or deny the existence of documents containing information about third parties Ford, Langford, and Gordon.

## II.     Exemption 2

Exemption 2 of FOIA excepts from disclosure matters "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2).  The exemption "applies to material 'used for predominantly internal purposes.'"  *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (quoting *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051,

1073 (D.C. Cir. 1981)).  "If the threshold test of predominant internality is met, an agency may withhold the material 'by proving that either [1] disclosure may risk circumvention of agency regulation, or [2] the material relates to trivial administrative matters of no genuine public interest.'" *Id.* (quoting *Schwaner v. Dep't of Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990)). "Predominantly internal documents the disclosure of which would risk circumvention of agency statutes and regulations are protected by the so-called 'high 2' exemption[, and] predominantly internal documents that deal with trivial administrative matters fall under the 'low 2' exemption." *Id.*

The FBI has invoked Exemption 2 with respect to four documents, all of which were reviewed *in camera*.[4]  Based on its review of these documents, the Court finds that the material withheld under Exemption 2 relates to the internal practices of the FBI, specifically the use of confidential source symbol numbers.  (Hardy Decl. at 17.)  Mr. Roth has not asserted any specific challenge to the information withheld under Exemption 2,[5] and the Court is convinced that such information is administrative in nature and is of no genuine public interest.  *See Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 485-86 (D.C. Cir. 1980); *Branch v. FBI*, 658 F. Supp. 204, 208 (D.D.C. 1987) ("There is no question that [source symbols and file numbers are] trivial and may be withheld as a matter of law under Exemption 2.").  The FBI has therefore met its burden of establishing the applicability of Exemption 2 with respect to these documents.

---

[4] The Court reviewed documents Roth/Bower 76, 108, 112, and 457, each of which contained information withheld under Exemption 2.  (Def.'s Mem. at 17.)

[5] Mr. Roth earlier challenged certain information related to polygraphs that the FBI at one time withheld in part under Exemption 2.  (Pl.'s Opp. at 18; Pl.'s Reply Mem. In Support of Cross Mot. For a More Particularized *Vaughn* Index or *In Camera* Review of Withheld and Redacted Documents at 6.)  This dispute is no longer before the Court.

III.    **Exemptions 6 and 7(C)**

Exemption 6 permits withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In order to evaluate the propriety of withholding information based on privacy concerns, "the court must balance the privacy interests involved against the public interest in disclosure." *Safecard Servs., Inc.*, 926 F.2d at 1205; *see also Lesar*, 636 F.2d at 486 n.80 (a court must "balance the conflicting interests and values involved" when reviewing Exemptions 6 and 7(C)).

The FBI has invoked Exemptions 6 and 7(C) to justify the withholding of 40 documents in their entirety and the redacting of an additional 26 pages of documents, all of which were reviewed *in camera*.[6] The agency asserts that these documents contain the names and

---

[6] The Court reviewed documents Roth/Bower 118, 30-31, 781, 1072-1074, 1080, 1088, 1097-1109, 1111-1114, 1117, 1119-1120, 1123, 1134-1135, 1137-1138, 1493-1494, 1496-1497, 1538-1539, 883, 1275, 46-47, 76, 108, 92-93, 98-101, 477-478, 111-113, 128, 129-130, 205-207, 254, 256, and 457, each of which contained information withheld under Exemptions 6 and 7(C). (Def.'s Mem. at 27-33.) In all cases in which the FBI asserted Exemption 6, it also asserted Exemption 7(C). (*Id.*) Exemption 7(C)'s privacy language is "broader than the comparable language in Exemption 6 . . . ." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989). As such, "the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files." *Id.* The FBI asserts that all of the documents currently at issue relate to a 1983 murder case in which the FBI assisted local authorities with the investigation. (Def.'s Mem. at 25.) The Court agrees that these documents were compiled for law enforcement purposes. As such, the Court assessed the FBI's claims with respect to these documents under Exemption 7(C), since material not protected by Exemption 7(C) would similarly fall outside of the more limited protection provided by Exemption 6.

identifying information of local law enforcement employees;[7] third parties merely mentioned in FBI records;[8] state, local, and non-FBI federal government personnel;[9] third parties of investigative interest;[10] third parties who provided information to the FBI;[11] and commercial institution personnel.[12]  The FBI bears the burden of establishing that the balance between any private interest in withholding this information on the one hand and the public interest in disclosure of that information on the other tips in favor of privacy, thereby justifying the withholding of the requested material under the asserted exemptions.  5 U.S.C. § 552(a)(4)(B).  It is Mr. Roth's burden to support his claim that the public interest will be served by the disclosure of the specific information being withheld.  *King v. U.S. Dep't of Justice*, 830 F.2d 210, 234 (D.C. Cir. 1987).

Despite its stated goal of agency disclosure, Congress "underst[ood] that disclosure of records containing personal details about private citizens can infringe significant privacy

---

[7] The FBI asserts that such information is redacted from documents Roth/Bower 46, 97-98, 108, 111-113, 206, and 254.  (Def.'s Mem. at 27.)

[8] The FBI asserts that such information is redacted from documents Roth/Bower 47, 93, 108, 112, 128, 130, 205-207, 256, 457, and 477-478.  (Def.'s Mem. at 28-29.)

[9] The FBI asserts that such information is redacted from document Roth/Bower 46. (Def.'s Mem. at 29.)

[10] The FBI asserts that such information is redacted from documents Roth/Bower 30-31, 46-49, 91-93, 98-101, 108, 111-113, 128-130, and 206-207.  It also asserts that such information necessitates the complete withholding of documents Roth/Bower 781, 1072-1074, 1080, 1088, 1097-1109, 1111-1114, 1117, 1119-1120, 1123, 1134-1135, 1137, 1138, 1493-1494, 1496-1497, and 1538-1539. (Def.'s Mem. at 29-30.)

[11] The FBI asserts that such information is redacted from documents Roth/Bower 76, 92, 98-99, 108, 111-113, 129, 254, 256, 457, 477, and 1275.  It also asserts that such information necessitates the complete withholding of document Roth/Bower 1538.  (Def.'s Mem. at 31-32.)

[12] The FBI asserts that such information is redacted from documents Roth/Bower 46-47, 457, and 883.  (Def.'s Mem. at 32-33.)

interests." *Reporters Comm.*, 489 U.S.at 766.  Further, "the mention of an individual's name in a

law enforcement file will engender comment and speculation and carries a stigmatizing

connotation," and the "privacy interests of the persons mentioned in [] investigatory files do not

necessarily diminish with the passage of time." *Branch*, 658 F. Supp. at 209.  Thus, "Exemption

7(C) 'affords broad[] privacy rights to suspects, witnesses, and investigators.'" *Safecard Servs.,

Inc.*, 926 F.2d at 1205 (quoting *Bast v. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981)).

"Absent exceptional circumstances, the balance [under Exemption 7(C)] categorically favors

withholding the names and addresses of third parties." *Mays v. DEA*, 234 F.3d 1324, 1327 (D.C.

Cir. 2000).  Accordingly, there is a significant privacy interest in the names and identifying

information of parties contained in the FBI files at issue.

Exemption 7(C) requires a FOIA requester to "show that the public interest sought to be

advanced [by disclosure] is a significant one, an interest more specific than having the

information for its own sake." *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172

(2004).  Also, a requester must show that the information sought is "likely to advance that

interest," or the invasion of privacy is unwarranted. *Id.*   "[T]he only relevant 'public interest in

disclosure' to be weighed" by the Court is "the extent to which disclosure would serve the 'core

purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the

operations or activities of the government.'" *U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 495

(1994) (quoting *Reporter's Comm.*, 489 U.S. at 775).

Mr. Roth suggests the FBI failed to produce "material and exculpatory information"

about the murders for which Mr. Bower was convicted and contends that disclosure of

information contained in the withheld and redacted files would serve the public interest "in

knowing whether the U.S. Attorney's Office and the FBI ignored exculpatory evidence in an

attempt to obtain a conviction and a sentence of death."  (Pl.'s Opp. at 28.)  Essentially, Mr. Roth

alleges that the FBI did not disclose exculpatory evidence that he believes should have been

produced at Mr. Bower's trial under *Brady v. Maryland*, 373 U.S. 83 (1963).  But it is well-

established that the FBI is not "required by FOIA to forego a statutory exemption for a document

in its possession because the document has been identified as possibly exculpatory," as

"[j]udicial process is available, both pre-trial and post-trial, for these purposes."  *Johnson v. U.S.*

*Dep't of Justice*, 758 F. Supp. 2, 5 (D.C. Cir. 1991).  And, Mr. Bower's personal interest in

obtaining potentially exculpatory documents in order to attack his conviction "does not count in

the calculation of public interest."  *Oguaju v. U.S.*, 288 F.3d 448, 450 (D.C. Cir. 2002), *vacated*

*and remanded on other grounds,* 541 U.S. 970 (2004), *reinstated*, 378 F.3d 1115 (D.C. Cir.

2004); *see also Engelking v. DEA*, 119 F.3d 980, 980-81 (D.C. Cir. 1997); *Johnson*, 758 F. Supp.

at 5; *Neely v. FBI*, 208 F.3d 461, 464 (4th Cir. 2000).

    As to Mr. Roth's assertion that there is a public interest in uncovering alleged

wrongdoing by the FBI in failing to disclose possibly exculpatory information, he has not

presented sufficient evidence for the Court to question the FBI's performance of its duties.

"[U]nless there is compelling evidence that the agency denying the FOIA request is engaged in

illegal activity, and access to the names of private individuals appearing in the agency's law

enforcement files is necessary in order to confirm or refute that evidence, there is no reason to

believe that the incremental public interest in such information would ever be significant."

*Safecard Servs.*, 926 F.2d at 1205-06.  Mr. Roth's allegation that 25 years ago the FBI failed to

produce what he and Mr. Bower now believe is exculpatory material, based on evidence they

have developed since the trial, is inadequate.  "[W]here there is a privacy interest protected by

Exemption 7(C) and the public interest being asserted is to show that responsible officials acted

negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure." *Favish*, 541 U.S. at 174. Moreover, even assuming *arguendo* that the records requested by Mr. Roth would reveal that the FBI improperly failed to disclose exculpatory documents to Mr. Bower, "exposing a single garden-variety act of misconduct would not serve FOIA's purpose of showing 'what the Government is up to.'" *Oguaju*, 288 F.3d at 451 (quoting *Reporters Comm.*, 489 U.S. at 780). Mr. Roth's claim that the FBI withheld exculpatory material falls short of the compelling evidence needed to counterbalance the privacy interests at issue.

Several documents withheld under Exemptions 6 and 7(C) merit further discussion.  The FBI withheld in their entirety surveillance photographs[13] of third-party individuals on the grounds that the photographs included names of and/or identifying information about third parties of investigative interest.  (Def.'s Mem. at 29-30.)  Having reviewed the copies of these photographs, the Court is unable to discern any identifying information in the copies of the following documents: Roth/Bower 1073-1074, 1080, 1088, 1098, 1099, 1100, 1106, 1108, 1111, 1113, 1114, 1117, 1119, 1120, 1123, 1134, 1135, and 1137.  The Court recognizes that the lack of identifying details in the copies of the photographs which have been provided may be due to poor photocopying, and that the actual photographs may contain such information.  If so, the photographs were properly withheld.  If the copies reviewed by the Court are in fact accurate reflections of the photographs as they exist in the FBI's files, the Court finds that no privacy interest is protected by withholding them, and the FBI must produce these 19 photographs to plaintiff within 20 days of entry of this Order.

---

[13] These documents are Roth/Bower 1072-1074, 1080, 1088, 1097-1109, 1111-1114, 1117, 1119-1120, 1123, 1134-1135, 1137, and 1138.

The FBI also produced a redacted version of Roth/Bower 205, asserting that the redacted material contains names and/or information that would identify third parties.  (Def.'s Mem. at 28-29.)  The second paragraph of this page has been almost entirely redacted.  Similarly, the FBI redacted almost all of the first full paragraph of Roth/Bower 206, claiming it contains material that identifies local law enforcement and third parties.  (Def.'s Mem. at 27-30).  The Court finds that in both paragraphs, there is non-exempt, segregable information, the disclosure of which could not "reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  This material should be produced.  Accordingly, the Court orders the FBI to provide Mr. Roth with revised versions of Roth/Bower 205 and 206, redacting only those portions identified by the Court in the accompanying *In Camera* Order to Defendant, within 20 days of entry of this Order.

Other than the copied photographs which the Court has identified and the portions of Roth/Bower 205-206 which have been discussed above, Mr. Roth has not demonstrated how the disclosure of names and other identifying information would serve the public interest, and the Court's *in camera* review of the information withheld by the FBI under Exemptions 6 and 7(C) indicates no such interest.  The Court also confirms that, with the exception of Roth/Bower 205-206, the FBI has produced all segregable, non-exempt information.  5 U.S.C. § 552(b).  Thus, the FBI has met its burden of establishing the applicability of Exemptions 6 and 7(C) with respect to these documents.

### IV.     Exemption 7(D)

Exemption 7(D) permits the withholding or redacting of law enforcement records where disclosure "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by a criminal law enforcement authority in the

course of a criminal investigation . . . information furnished by a confidential source."  5 U.S.C.

§ 552(b)(7)(D).  "A threshold question presented by a claim under Exemption 7(D) is whether

the documents were gathered for law enforcement purposes," *Hall v. U.S. Dep't of Justice*, 26 F.

Supp. 2d 78, 80 (D.D.C. 1998), which the Court has found to be true as to all documents at issue

here, as they were assembled by the FBI in the course of a criminal investigation.  (Def.'s Mem.

at 25.)

      Under Exemption 7(D), the pertinent question is "whether the particular source spoke

with an understanding that the communication would remain confidential."  *U.S. Dep't of Justice*

*v. Landano*, 508 U.S. 165, 172 (1993).  As such, the Court must determine whether the sources

named or providing withheld material were in fact confidential.  "[A] source is confidential

within the meaning of Exemption 7(D) if the source provided information under an express

assurance of confidentiality or in circumstances from which such an assurance could be

reasonably inferred."  *Id.* (internal quotation omitted).  A source is not presumed confidential

merely because of his or her cooperation with a federal law enforcement agency, and the FBI

must point to more "narrowly defined circumstances" that support an inference of

confidentiality.  *Id.*; *see also Billington v. U.S. Dep't of Justice*, 233 F.3d 581, 584 (D.C. Cir.

2000) (*Landano* requires a "particularized justification" of implied confidentiality).

Circumstances that may indicate implied confidentiality include whether the informant was paid,

the informant's relationship with the agency, the character of the crime at issue, and the source's

relationship to the crime.  *Landano*, 508 U.S. at 179.

      The FBI has invoked Exemption 7(D) with respect to the redactions on 16 pages of

documents.  The agency states that these documents contain information provided by and/or

identifying data concerning local law enforcement agencies;[14] third parties under an "implied" assurance of confidentiality;[15] confidential source symbol numbers;[16] source symbol numbered informants;[17] and third parties under an "express" assurance of confidentiality.[18] (Def.'s Mem. at 38-42.)  After reviewing these documents,[19] the Court is satisfied that the majority of the material withheld under Exemption 7(D) was provided to the FBI pursuant to express assurances of confidentiality or under circumstances strongly implying that an assurance of confidentiality was understood.

Only one document in this group merits further discussion.  Document Roth/Bower 112 contains material protected by Exemptions 2, 6, 7(C), and 7(D).  Specifically, the FBI has redacted most of the second paragraph on the grounds that it contains material provided by a source who was expressly promised confidentiality.  (Def.'s Mem. at 41-42.)  However, after reviewing the document and the preceding page, the Court is unable to determine what, if any, material in this part of the document came from such a source.  While any names and/or other identifying information protected by Exemptions 6 and 7(C) are properly withheld, the Court finds that the document contains other, segregable material that should be produced.  The Court orders the FBI to provide Mr. Roth with a revised version of Roth/Bower 112, redacting only

---

[14] These documents are Roth/Bower 206-207. (Def.'s Mem. at 39.)

[15] These documents are Roth/Bower 206-207, 254, and 256. (Def.'s Mem. at 40.)

[16] These documents are Roth/Bower 76, 108, 112, and 457.  (Def.'s Mem. at 41.)

[17] These documents are Roth/Bower 76, 108, and 457.  (Def.'s Mem. at 41.)

[18] These documents are Roth/Bower 98-99, 111-113, 129, and 477.  (Def.'s Mem. at 42.)

[19] These documents are Roth/Bower 76, 98-99, 108, 111-113, 129, 206-207, 254, 256, 457, and 477.  (Def.'s Mem. at 39-42.)

those portions identified by the Court in the accompanying *In Camera* Order for Defendant within 20 days of entry of this Order.

## V.    Requests for Searches of Third Parties

The final issue before the Court concerns Mr. Roth's FOIA request for documents relating to three third parties: Messrs. Ford, Langford, and Gordon.  The FBI argues that such documents and the fact of their existence in FBI investigative files are protected from disclosure by the Privacy Act[20] and under Exemptions 6 and 7(C).  (Reply and Opp. to Pl.'s Cross Mot. ["Def.'s Reply"] at 28.)  The agency has thus "glomarized" Mr. Roth's third party request by refusing to confirm or deny the existence of responsive records to protect the privacy interests of the named individuals.  (Def.'s Reply at 31.)  Because Mr. Roth has not obtained privacy waivers from Messrs. Ford, Langford, and Gordon, and because it may be presumed that each of these individuals is still alive, the Court agrees that information about them, including the existence of their names in FBI criminal investigative files, is protected from disclosure.

Mr. Roth contends that the FBI's "Glomar" response is improper because the government should not categorically deny a FOIA request unless confirming or denying the existence of the records sought would associate the individual named in the request with criminal activity.  (Pl.'s Opp. at 36.)  But confirming the existence of records relating to Messrs. Ford, Langford, and Gordon in FBI files would do just that.  The FBI states that any information responsive to Mr. Roth's request is reasonably likely to be contained in criminal investigative files of the FBI's

---

[20] The Privacy Act prohibits an agency from disclosing "any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," unless the record falls within one of 12 listed exemptions.  5 U.S.C. § 552a(b).  One of the exemptions includes the necessary disclosure of records under FOIA, which requires the Court to determine whether the requested documents fall within one or more of the FOIA exemptions, as the FBI argues they do.  (Def.'s Reply at 29-30.)

Central Records System, and that no other record system within the FBI would reasonably contain information about these individuals. (Second Hardy Decl. ¶ 24; Hardy Decl. ¶¶ 37-42.) Mr. Roth has provided no evidence or argument that the FBI's position is incorrect. Indeed, Mr. Roth asserts that these parties have been identified by witnesses as having committed the 1983 murders and refers to them as the "real perpetrators." (Pl.'s Opp. at 7.) To the extent that Mr. Roth believes information about Messrs. Ford, Langford, and Gordon exists, he believes it to be part of criminal investigative files. For the FBI to confirm that it maintains records relating to these individuals would thus associate them with criminal activity.

As for the privacy interests at stake, "persons involved in FBI investigations—even if they are not the subject of the investigation—'have a substantial interest in seeing that their participation remains secret.'" *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (quoting *King*, 830 F.2d at 233). "Exemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity." *Id.* (internal quotation omitted). It is irrelevant that 25 years have passed since the 1983 murders and investigation, as the passage of time does not necessarily diminish privacy interests. *Branch*, 658 F. Supp. at 209. Mr. Roth has presented no evidence or change in circumstance to suggest that Mr. Ford, Mr. Langford, and Mr. Gordon have less of an interest in keeping their possible involvement in FBI investigations private now than they would have had in 1983.

Mr. Roth contends that Messrs. Ford, Langford, and Gordon have a diminished privacy interest in the fact that their names may have been mentioned in FBI investigative files because these individuals have long criminal histories. (Pl.'s Opp. at 37.) The Court disagrees. That these individuals may have been convicted of other offenses does not negate their interest in

keeping their involvement, if any, in the investigation of different crimes secret.  Their privacy interest in personal information that is not publicly available does not disappear because other information is publicly available.  *See Reporter's Comm.*, 489 U.S. at 764 (acknowledging privacy interest in confidential criminal "rap sheet" even where information contained in document could be found in public records).

Even if Mr. Roth is correct and the privacy interests of Mr. Ford, Mr. Langford, and Mr. Gordon are diminished, their interests must still be weighed against the public interest in releasing documents responsive to Mr. Roth's request.  For the reasons discussed above, the Court finds that there is no public interest in the release of these documents, if they exist.  Mr. Roth seeks documents concerning these third parties because he believes that they are the "real killers" of the victims in the 1983 murders, not Mr. Bower, and he is seeking to overturn Mr. Bower's conviction.  But Mr. Roth's and Mr. Bower's personal stake in the records does not establish a public interest, *Oguaju*, 288 F.3d at 450, and Mr. Roth has provided no evidence that the disclosure of documents concerning Messrs. Ford, Langford, and Gordon will "contribut[e] significantly to public understanding of the operations or activities of the government," *FLRA*, 510 U.S at 495 (quoting *Reporters Comm.*, 489 U.S. at 775).  The purpose of FOIA "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Reporter's Comm.*, 489 U.S. at 773.  As such, the FBI properly refused to search for documents relating to Messrs. Ford, Langford, and Gordon absent privacy waivers or proof of death.

## CONCLUSION

Based on its *in camera* review of 66 documents, the briefs of the parties, the FBI's *Vaughn* index, and the declarations from Mr. Hardy, the Court will grant the FBI's motion for

summary judgment with the exception of documents Roth/Bower 112 and 205-206, which the

FBI must produce to Mr. Roth as set forth in the accompanying *In Camera* Order to Defendant,

and documents Roth/Bower 1073-1074, 1080, 1088, 1098, 1099, 1100, 1106, 1108, 1111, 1113,

1114, 1117, 1119, 1120, 1123, 1134, 1135, and 1137, which the FBI must produce to Mr. Roth if

the agency's photographs contain no more detail than is in the copies provided to the Court.  A

separate Order and an *In Camera* Order to Defendant accompany the Memorandum Opinion.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge


Date:   September 23, 2009